1  SHAWN WESTRICK (SBN 235313)
   shawn@kawahitoshraga.com
2  KAWAHITO & SHRAGA LLP
   11845 W. Olympic Blvd. Suite 665
3  Los Angeles, California 90064
   Telephone: (310) 746-5300
4  Facsimile: (310) 593-2520

5  Attorneys for Plaintiff and class members

6

7

8              **UNITED STATES DISTRICT COURT**

9        **FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN**
                              **DIVISION**
10

11  WARREN SUMNER, individually, and      Case Number:  SACV 8:09-000025-
    on behalf of other members of the     DOC (ANx)
12  general public similarly situated,
                                          [Assigned to the Hon. Judge David O.
13              Plaintiff,                 Carter]

14       vs.                              **MEMORANDUM OF POINTS AND**
                                          **AUTHORITIES IN SUPPORT OF**
15  TOYS R US, INC., a Delaware           **MOTION FOR PRELIMINARY**
    corporation, and DOES 1 through 10,   **APPROVAL OF A CLASS ACTION**
16  inclusive,                            **SETTLEMENT**

17              Defendants.               Date:          December 6, 2010
                                          Time:          8:30 a.m.
18                                        Place:         Courtroom 9B

19

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................... 1

II.    CLASS ACTION SETTLEMENT APPROVAL PROCEDURE ................... 2

III.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS PROPER .......... 4

       A.   The Settlement Was Achieved After Substantial Investigation,
            Discovery, Legal Analysis and Zealous Challenges to Certification,
            Liability and Damages. ....................................................... 5

            1)   The Pre-Filing Stage ................................................. 7

            2)   The Complaint ........................................................ 7

            3)   Defendant's Counsel ................................................ 8

            4)   Class Counsel ........................................................ 9

            5)   Discovery ............................................................... 9

            6)   Settlement Was Achieved After Evaluating the Factors Affecting
                 Certification, Liability and Damages ...................... 11

                 (i)    TRU Defended Against Certification – Rule 23 ... 11

                 (ii)   TRU Defended Against Liability and Damages ... 12

       B.   The Settlement ................................................................. 13

       C.   The Proposed Service Payments to the Class Representatives Are
            Reasonable and in Amounts Routinely Awarded ............................. 14

       D.   The Proposed Payment to Class Counsel for Attorneys' Fees and
            Expenses Is Reasonable ....................................................... 14

IV.    PRELIMINARY CLASS CERTIFICATION IS APPROPRIATE ............... 17

       A.   The Proposed Class Is Sufficiently Numerous and Ascertainable ...... 18

       B.   The Commonality Requirement Is Met ........................................ 18

       C.   The Typicality Requirement Is Met .......................................... 18

       D.   The Adequacy Requirement Is Met ........................................... 18

       E.   Common Issues Predominate Over Individual Issues ....................... 19

F.      Class Settlement Is Superior ............................................................... 20

V.     THE PROPOSED CLASS NOTICE IS APPROPRIATE ............................ 20

A.      The Class Notice Satisfies Due Process .............................................. 20

B.      The Proposed Class Notice Is Accurate and Informative.................... 21

VI.    A FINAL APPROVAL HEARING SHOULD BE SCHEDULED............... 21

VII.   CONCLUSION ............................................................................................ 22

# <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Amchem Products v. Windsor*, 521 U.S. 591 (1997) ............................................... 21

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1982) ............................ 3

*Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974) ............................................. 22

*Gay v. Waiters' & Dairy Lunchmen's Union*, 489 F. Supp. 282 (N.D. Cal. 1980) . 19

*Hammon v. Barry*, 752 F. Supp. 1087 (D.D.C. 1990)................................................ 5

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011(9th Cir. 1998)................................passim

*In re Chicken Anti-Trust Litigation*, 560 F. Supp. 957 (N.D. Ga. 1980) .................. 5

*Jordan v. County of Los Angeles*, 669 F.2d 1311 (9th Cir. 1982) .......................... 19

*Jordan v. County of Los Angeles, 509 U.S. 810 (1982)* ......................................... 19

*Murillo v. Texas A & M Univ. Sys.*, 921 F. Supp. 443 (S.D. Tex. 1996)................... 6

*Poulos v. Caesars World, Inc.*, 379 F.3d 654 (9th Cir. 2004) ............................... 13

*Priddy v. Edelman*, 883 F.2d 438 (6th Cir. 1989)..................................................... 5

*Singer v. Becton Dickinson & Co.*, 2010 U.S. Dist. LEXIS 53416, *21 (S.D. Cal.
    June 1, 2010) ..................................................................................................... 16

*Six (6) Mexican Workers v. Az. Citrus Growers*, 904 F.2d 1301 (1990) ............... 16

*Sommers v. Abraham Lincoln Federal Savings & Loan Assoc.*, 79 F.R.D. 571 (E.D.
    Pa. 1978) ............................................................................................................. 5

*Sumitomo Copper Litigation*, 74 F. Supp. 2d 393 (S.D.N.Y. 1999)....................... 17

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993)............................. 4

*Wehner v. Syntex Corp.*, 117 F.R.D. 641 (N.D. Cal. 1987) .................................... 20

## <u>TABLE OF AUTHORITIES (CONT.)</u>

**State Statutes**

Cal. Bus. and Prof. Code § 17200 ........................................................................ 8

Cal. Lab. Code § 201 ............................................................................................. 8

Cal. Lab. Code § 202 ............................................................................................. 8

Cal. Lab. Code § 226 ............................................................................................. 8

Cal. Lab. Code § 226.7 .......................................................................................... 8

Cal. Lab. Code § 510 ............................................................................................. 8

Cal. Lab. Code § 512 ............................................................................................. 8

Cal. Lab. Code § 2698 ......................................................................................... 13

**Federal Statutes**

Fed. Rules of Civ. Proc. 23 .............................................................. 13, 18, 19, 22

Fed. Rules of Civ. Proc. 30(b)(6) ....................................................................... 12

**Other Authorities**

Manual for Complex Litigation, Third

  (Fed. Judicial Center 1995) ("Manual") ..................................................... 3, 4, 21

Newberg on Class Actions  (4th ed. 2002 and Supp. 2004) ......................... 2, 3, 5, 21

I.    **INTRODUCTION**

Plaintiff Warren Sumner ("Plaintiff" or "Class Representative") seeks preliminary approval of the proposed class action settlement of wage and hour claims with Toys "R" Us, Inc. ("Defendant" or "TRU").  Defendant does not oppose Plaintiff's Motion for Preliminary Approval.

The parties have settled claims that almost certainly never would have been maintained viably as individual actions.  In settling a proposed class of approximately 250 current and former TRU Store Managers stands to benefit.[1] Approval of this settlement will resolve all claims that had been brought in this class action, and TRU has agreed to pay up to $820,000 to settle all claims.  Kawahito & Shraga LLP ("Class Counsel") will seek a $273,333 attorneys' fees award, one-third of the settlement.  Class Counsel will also seek reimbursement of litigation costs.

The Settlement Agreement satisfies all of the criteria for preliminary approval under federal law.  Its terms are objectively reasonable and are the product of arms'-length negotiations that occurred between April and October 2010.  Accordingly, Class Counsel requests preliminarily approval of the proposed Settlement Agreement and an order directing distribution of the Notice Packet, which summarizes the relevant terms of the Settlement Agreement and informs class members of their right to participate, opt out or object to the settlement.

Class Counsel further request that the Court preliminarily certify the class for purposes of settlement and preliminarily approve the application for attorneys' fees and costs, as well as the Class Representative's service payment.

---

[1]    The class is defined as all store managers (hereinafter "Store Managers") who worked for TRU from December 5, 2004 through the date of Preliminary Approval. (*See* Declaration of Shawn Westrick, dated November 19, 2010 ["Westrick Decl."], Ex. A, Settlement Agreement, ¶ 35.Attached as Exhibits B and C to the Westrick Declaration are the Notice of Preliminary Approval of Class Action Settlement and the Claim Form [collectively "Notice Packet"].)

The following schedule sets forth relevant dates and deadlines, predicated on the Settlement Agreement being preliminarily approved. This sequence is also outlined in the [Proposed] Order lodged concurrently with this Motion.

| Date and Timing | Event |
| --- | --- |
| December 16, 2010 (10 days after preliminary approval of settlement) | TRU provides Claims Administrator with class members' mailing addresses. |
| December 27, 2010 (10 days after TRU provides class member addresses to Claims Administrator) | Claims Administrator mails Notice Packet to class members. |
| January 26, 2011 (30 days after Claims Administrator mails Notice Packet to class members) | Claims Administrator mails Reminder Postcard to class members who have not responded. |
| February 25, 2011 (60 days after Claims Administrator mails Notice Packet to class members) | Deadline for class members to submit Claim Form, exclude themselves, or to object. |
| March 11, 2011 (14 days after the deadline to submit claim forms) | Deadline to file Motion for Final Approval. |
| April 4, 2011 (7 days before final approval hearing) | Parties file any supplemental papers in support of Motion for Final Approval. |
| April 11, 2011 | Final Approval Hearing |

## II.   CLASS ACTION SETTLEMENT APPROVAL PROCEDURE

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost and rigors of formal litigation. *See* Newberg and Conte, Newberg on Class Actions § 11.41 (4th ed. 2002 and Supp. 2004) ("Newberg"); *and* s*ee*, *e.g.*, *Class Plaintiffs v.*

1  *City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1982).

2      Judicial proceedings under Rule 23 of the Federal Rules of Civil Procedure

3  have led to a defined procedure and specific criteria for settlement approval in class

4  action settlements, described in the Manual for Complex Litigation, Third (Fed.

5  Judicial Center 1995) ("Manual") § 30.41.  The Manual's settlement approval

6  procedure describes three distinct steps:

7      1.    Preliminary approval of the proposed settlement at an informal hearing;

8      2.    Dissemination of mailed and/or published notice of the settlement to all

9  affected class members; and

10      3.    A "formal fairness hearing" (or Final Approval Hearing) at which class

11  members may be heard regarding the settlement, and at which evidence and

12  argument concerning the fairness, adequacy, and reasonableness of the settlement is

13  presented.

14      This procedure safeguards class members' procedural due process rights and

15  enables the court to fulfill its role as the ultimate guardian of class interests.

16  Newberg, § 11.22 et seq.  The purpose of the court's preliminary evaluation of the

17  settlement is to determine whether it is within the "range of reasonableness," and

18  whether notice to the class and the scheduling of a final approval hearing should be

19  ordered.  *See* Newberg § 11.25.  The decision to approve or reject a proposed

20  settlement is committed to the court's sound discretion.  *Hanlon v. Chrysler Corp.*,

21  150 F.3d 1011, 1026 (9th Cir. 1998).

22      Preliminary class certification is appropriate at the preliminary approval stage

23  where, as here, the class as defined in the parties' settlement has not previously been

24  certified, and the requirements for certification are met.  *See* Newberg § 11.22.  The

25  practical purpose of preliminary class certification is to facilitate distribution to the

26  class of notice, conveying to class members the settlement terms and the date and

27  time of the final approval hearing.  *See* Manual § 30.41.  The additional rulings

28

1   sought in this motion (approving the form and content of the class notice) are also

2   typically made at the preliminary approval stage.  *See* Newberg § 11.26.

3   **III.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS PROPER**

4           The Manual for Complex Litigation summarizes the preliminary approval

5   criteria as follows:

6           First, counsel submit the proposed terms of the settlement
            and the court makes a preliminary fairness evaluation . . .
7           If the preliminary evaluation of the proposed settlement
            does not disclose grounds to doubt its fairness or other
8           obvious deficiencies, such as unduly preferential treatment
            of plaintiffs or of segments of the class, or excessive
9           compensation for attorneys, and appears to fall within the
            range of possible approval, the court should direct that
10          notice under Rule 23(e) be given to the class members of a
            formal fairness hearing, at which arguments and evidence
11          may be presented in support of and in opposition to the
12          settlement.

13

14   Manual § 30.41; *and see Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1377 (9th

15   Cir. 1993).

16           To make this fairness determination, courts consider several relevant factors,

17   including:

18           the strength of the plaintiff's case; the risk, expense,
            complexity and likely duration of further litigation; the
19           risk of maintaining class action status through trial; the
            amount offered in settlement; the extent of discovery
20           completed and the stage of the proceedings; [and] the
21           experience and views of counsel… .

22   *Hanlon*, 150 F.3d at 1026.  Furthermore, courts must give:

23           proper deference to the private consensual decision of the
            parties, [since] the court's intrusion upon what is
24           otherwise a private consensual agreement negotiated
            between the parties to a lawsuit must be limited to the
25           extent necessary to reach a reasoned judgment that the
26           agreement is not the product of fraud or overreaching by,
            or collusion between, the negotiating parties, and that the
27           settlement, taken as a whole, is fair, reasonable and

28

adequate to all concerned.

*Id.* at 1027.[2]

Because class members will receive notice and have an opportunity to be heard on the settlement, the Court need not review the settlement in detail at this juncture.  Preliminary approval is appropriate so long as the proposed settlement falls within the range of possible final approval.  *See* Newberg § 11.25.  Indeed, at the outset of considering a motion for preliminary approval, courts begin with a presumption that the settlement is fair.[3] A preliminary review of the settlement gives rise to no doubts as to its fairness.  As demonstrated below, the settlement falls well within the range of reasonableness.

### A.  The Settlement Was Achieved After Substantial Investigation, Discovery, Legal Analysis and Zealous Challenges to Certification, Liability and Damages.

In litigating this matter, Class Counsel devoted substantial time and resources

---

[2]    If the parties request approval of a class action settlement, a court generally cannot require the parties to modify or otherwise alter the terms of the proposed settlement.  *Hanlon*, at 1026 ("[t]he settlement must stand or fall in its entirety"); *see also Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989) ("The fact that a plaintiff might have received more if the case had been fully litigated is no reason not to approve the settlement").

A court should not "substitute its judgment for that of the proponents of the settlement."  *Hammon v. Barry*, 752 F. Supp. 1087, 1093 (D.D.C. 1990); *see also In re Chicken Anti-Trust Litigation*, 560 F. Supp. 957, 962 (N.D. Ga. 1980) (court will not substitute its assessment of the risks and value of litigation "without a sound basis for concluding [a] settlement [is] inadequate"); *Sommers v. Abraham Lincoln Federal Savings & Loan Assoc.*, 79 F.R.D. 571 (E.D. Pa. 1978) (court must weigh settlement against possibility of no recovery had class action gone to trial).

[3]    Courts presume the absence of fraud or collusion in the negotiation of a settlement unless evidence to the contrary is offered; thus there is a presumption here that the negotiations were conducted in good faith.  Newberg, § 11.51; *Murillo v. Texas A & M Univ. Sys.*, 921 F. Supp. 443, 450 (S.D. Tex. 1996) (there is an "initial presumption of fairness when a proposed class settlement was negotiated at arm's length by counsel for the class").

to, among other things:

- Consulting with the Class Representative;
- Investigating TRU's background, including corporate structure and management;
- Developing and executing litigation strategies involving issues related to discovery, class certification, damages analysis, and settlement;
- Drafting an sending a letter to Store Managers inviting them to speak with Class Counsel;
- Contacting and interviewing class members about their work experiences;
- Drafting and responding to discovery;
- Resolving discovery disputes through the meet and confer process;
- Obtaining over 30 declarations from Store Managers in support of class certification;
- Reviewing declarations obtained by TRU in opposition to class certification;
- Researching similar cases across the country for insights into relevant legal issues and valuations in manager exemption cases;
- Researching relevant legal and procedural questions, including, but not limited to, the nuances involved in the various causes of action alleged in Plaintiff's Complaint, Wage Orders promulgated by California's Industrial Welfare Commission, Department of Labor Opinion Letters, recent case law and statistical proof;
- Engaging in substantial formal discovery, study of documents and information produced by Defendant, including, but not limited to compensation records, personnel files, employee handbooks, statistical data regarding the hours assigned to each store in California and the

hours actually used in each store;

- The taking and defending of numerous depositions, including three depositions of TRU's corporate representatives, depositions of TRU employees in their individual capacity as District Managers, depositions of Regional Vice-Presidents and Director of Operations, depositions of three Store Managers who executed declarations on behalf of TRU and defending Plaintiff's deposition;

- Preparing a motion for class certification;

- Preparing for and attending mediation; and

- Negotiating the terms of the settlement, drafting the agreement and preparing all the relevant documents for class notice and participation.

### 1)    The Pre-Filing Stage

The original Complaint was based upon substantial pre-filing research, both factual and legal.  Lengthy consultations with the named Plaintiff, Warren Sumner, and other witnesses triggered a detailed investigation of Defendant's policies and practices in connection with wage and hour issues.  These consultations and interviews informed Class Counsel's efforts to gather relevant documents (such as wage statements, employee manuals, compensation plans and other documents), which further informed Class Counsel of the potential legal issues that required additional research.  Class Counsel's detailed inquiry and examination of the evidence painted a picture of the conditions under which the class members worked.  Consequently, Class Counsel concluded that a class action should be filed to challenge the legality of Defendant's policy and practice of classifying Store Managers as exempt from overtime.[4]

### 2)    The Complaint

This action was originally filed in the Superior Court for the State of

---

[4]      (*See* Westrick Decl., ¶ 2.)

California, County of Orange, on December 5, 2008 by Plaintiff. The matter was removed to the United States District Court, Central District of California on January 7, 2009. A Scheduling Conference was held and the Court issued a Scheduling Order on June 1, 2009, setting dates for certification and trial. An Order granting Plaintiff leave to file a First Amended Complaint was issued on September 17, 2009, for the purpose of clarifying that Plaintiff sought to represent Store Managers that worked at both Toys "R" Us and Babies "R" Us locations. A Second Amended Complaint was filed on November 18, 2010, for the purpose of adding claims under the Private Attorneys General Act of 2004, California Labor Code § 2698, et seq.

The Second Amended Complaint alleges: (1) Violation of California Labor Code § 510; (2) Violation of California Labor Code §§ 226.7 and 512; (3) Violation of California Labor Code § 226.7; (4) Violation of California Labor Code §§ 201 and 202; (5) Violation of California Labor Code § 226; and (6) Violation of California Business and Professions Code § 17200 et seq.

Plaintiff Sumner sought relief on behalf of Store Managers, or persons with similar titles and/or similar job duties, who worked for Defendant in the State of California at any time during the period from four years prior to the filing of this Complaint to final judgment. This class comprises positions Defendant classified as exempt from overtime.[5]

### 3) *Defendant's Counsel*

TRU is represented by Jackson Lewis LLP ("Jackson Lewis"), a large national law firm. Jackson Lewis took the position that the causes of action were neither suitable for class certification nor had any merit, and litigated the case commensurate with that assessment.[6]

---

[5] (*See* Westrick Decl., ¶¶ 3-5.)
[6] (*See* Westrick Decl., ¶ 6.)

    *4)    Class Counsel*

James Kawahito and David Shraga founded Kawahito & Shraga LLP in November 2008.  In January 2010, Shawn Westrick joined the firm as a partner. The three partners have significant experience litigating various complex matters, including class actions.  The partners of Kawahito & Shraga LLP have litigated class actions as both counsel for plaintiffs and defendants.  Drawing on the wealth of experience of its attorneys, the firm has developed an established class action practice.  It is currently litigating numerous class action lawsuits, in various stages on both the plaintiff and defense side.  Of the class actions Class Counsel has litigated or is currently litigating, the majority involve wage and hour issues under California and federal law.  In the roughly 24 months since the firm was founded, the firm has successfully resolved four wage and hour class actions, including the present matter.  Furthermore, it has more than doubled in size from two to five attorneys.[7]

    *5)    Discovery*

Class Counsel propounded substantial written discovery early in this action, immediately upon the Rule 26(d) automatic discovery stay was lifted.

Interrogatories were propounded seeking the identities and contact information for the putative class members.  Defendant objected on third-party privacy grounds.  After meeting and conferring, Defendant agreed to produce the contact information.

Upon receiving the contact list, Class Counsel sent a letter to all of the putative class members.  This letter informed the putative class members of this action and its allegations.  Class Counsel interviewed a substantial number of these class members to discuss their experiences working for TRU.  Class member interviews resulted in the collection of information and documents, outside of

---

[7]    (*See* Westrick Decl., ¶ 7.)

1  Defendant's control, which proved critical in evaluating the class-wide strength and

2  value of the wage and hour claims alleged against TRU.  A second set of discovery

3  was served seeking the contact information of all District Managers and Regional

4  Vice-Presidents.

5          Plaintiff served a set of Requests for Production of Documents seeking

6  documents regarding TRU's policies for compensating Store Managers, policies for

7  meal and rest breaks and Plaintiff's personnel file.  A second set was served seeking

8  evidence of how TRU staffed its California stores.  Information sought included

9  both the full-time positions staffed at each store as well as the amount of labor hours

10  TRU assigned to each store as well as the amount of labor hours actually worked by

11  each store's non-exempt employees.  This evidence was sought to determine the

12  manner in which TRU centrally dictated the labor hours of non-exempt employees

13  to its stores.  Plaintiff's theory of the case contended that TRU maintained a

14  centralized algorithm for assigning non-exempt labor hours that understaffed its

15  California stores.  In California the only exempt position at the store level was the

16  Store Manager.  If Store Managers wanted to ensure that they did not exceed the

17  labor hours assigned to their stores they were required by systematic understaffing

18  to roll up their sleeves and perform non-exempt work.

19          Plaintiff noticed and took the deposition of three corporate representatives

20  regarding TRU's human resources' policies and procedures, TRU's knowledge of

21  Store Managers' job duties and TRU's method for determining how non-exempt

22  labor hours were assigned to stores.  Additionally, counsel for Defendant secured a

23  number of declarations from Store Managers stating that their experiences were so

24  incredibly varied suggesting that certification would be inappropriate.  Plaintiff

25  noticed and took the deposition of four Store Managers who executed declarations

26  in support of Defendant's opposition to class certification.  Plaintiff also took the

27  deposition of a District Manager and a Regional Vice-President to determine how

28

TRU managed its Store Managers.  Additionally, information was sought as to how Defendant enforced its assignment of non-exempt labor hours to its California stores.  Plaintiff also sought to take the depositions of TRU on the following topics: (1) time studies conducted by TRU to determine how long non-exempt tasks took to complete; (2) information regarding TRU's sales data for its California stores; and (3) information regarding communication between TRU and its owners regarding cost-saving measures that resulted in the reduction of domestic payroll as noted in TRU's corporate filings.  Defendant disputed Plaintiff's right to take additional depositions under Federal Rules of Civil Procedure 30(b)(6).  Plaintiff filed an *ex parte* application seeking an order to allow these additional depositions.  Prior to a hearing the parties reached an agreement and Plaintiff withdrew his *ex parte* application.

Defendant served a set of Interrogatories and Requests for Production of Documents seeking documents and witnesses that supported Plaintiff's allegations.  A second set of Requests for Production of Documents focused on Plaintiff's job duties, schedule and employment both before and after his employment with TRU.

Additionally, Defendant subpoenaed some of Plaintiff's former employers and his current employer seeking documents relating to Mr. Sumner's representations of his duties while employed at TRU.

Defendant noticed and took the deposition of Plaintiff Warren Sumner.  The parties also scheduled the deposition of Store Managers who had executed declarations in support of Plaintiff's motion for class certification.[8]

> ### 6)  *Settlement Was Achieved After Evaluating the Factors Affecting Certification, Liability and Damages*
>
> #### (i)  TRU Defended Against Certification – Rule 23

To certify a class action pursuant to Rule 23 of the Federal Rules of Civil

---

[8]  (*See* Westrick Decl., ¶¶ 8-25.)

Procedure ("Rule 23"), a plaintiff must establish the elements under Rule 23(a) of numerosity, commonality, typicality, and adequacy of the class representative and counsel, as well as the elements under a subpart of Rule 23(b).  Where the primary relief sought is monetary damages, the plaintiff must satisfy the elements of Rule 23(b)(3) – that common issues predominate over individualized issues ("predominance") and that class litigation is the superior method of resolution ("superiority").  *See Poulos v. Caesars World, Inc.*, 379 F.3d 654 (9th Cir. 2004).

TRU asserted a number of defenses against certification.  First, TRU contended that individualized issues predominated over common issues with respect to whether Store Managers' duties were sufficiently common.  TRU averred that there was a wide variance in the amount of time and set of duties performed by Store Managers based on a number of factors, including, but not limited to:  (1) store location; (2) store size; (3) manager experience; (4) staff experience; and (5) whether a store was a Toys "R" Us location or a Babies "R" Us location or a combination of both brands.  Given these factual differences, TRU took the position that "mini-trials" would be necessary for each class member, destroying the requisite predominance and superiority, and thus substantially reducing the likelihood of certification.[9]

### (ii)    TRU Defended Against Liability and Damages

In addition to its defenses pertaining to class certification, TRU defended itself as to the merits.  The central dispute concerning TRU's liability was whether the Store Manager position is properly classified as an exempt position pursuant to the executive exemption.

The executive exemption regulations establish an inquiry into whether an employee performs "managerial" duties for over 50% of their time.  TRU obtained declarations from approximately 50 Store Managers who attested that not only did

---

[9]    (*See* Westrick Decl., ¶¶ 26-28.)

their job duties vary, but that they performed "managerial" duties a majority of their time.  Additionally, TRU argued that it sufficiently provided labor hours to its stores, evidenced by the high amount of customer satisfaction, which would not be possible if a store was as critically understaffed as Plaintiff contended.[10]

## B.    The Settlement

On April 15, 2010, the parties conducted a full-day mediation in Irvine with well-known and experienced mediator, Scott Markus.  Throughout the day, Plaintiff's allegations were challenged procedurally and substantively.  The parties were unable to settle the matter.  Discovery continued and the parties began preparing for additional depositions and the upcoming motion for class certification.

The parties agreed to attend a second mediation.  On June 7, 2010, the parties again met with Mr. Markus to settle the matter.  After an adversarial day of arms'-length mediation, the parties were again unable to settle the case.  Mr. Markus made a mediator's proposal.  Later that week the parties both accepted the proposal.  Ultimately, TRU agreed to pay up to $820,000 to settle all claims.  While the major settlement terms were agreed to, the parties continued negotiating additional settlement terms through October 2010.

With a class size of approximately 250 class members, it is unlikely that the relatively small monetary claims by individual class members would have proved viable without the class action mechanism.  Attorneys' fees and costs will be paid out of the settlement fund, as will the Class Representative's service payment, employment taxes, penalties to the State of California[11] and the expenses associated with settlement and claims administration (*i.e.*, notifying the class, processing

---

[10]    (*See* Westrick Decl., ¶¶ 29-30.)

[11]    $20,000 has been apportioned for civil penalties pursuant to the Private Attorneys General Act of 2004, California Labor Code § 2698, et seq.  (*See* Settlement Agreement, ¶ 4.6.)

responses, and distributing payments).[12] Additionally, because each class member's individual share is based upon the length of his or her employment during the class period relative to the other class members, the distribution is weighted in favor of those class members who were most affected by the alleged wage and hour violations.[13]

The parties have subsequently negotiated the content of the forms to be sent to class members in conjunction with the mailing of class notice.

**C.     The Proposed Service Payments to the Class Representatives Are Reasonable and in Amounts Routinely Awarded**

Separate payment to the named Class Representative is intended to recognize the Plaintiff's time and effort on behalf of the class.  Class Counsel maintains, and Defendant does not contest, that the proposed payment of $10,000[14] to Plaintiff Sumner for his services as Class Representative is fair and appropriate.

The Class Representative risked having to pay TRU's attorneys' fees and costs in the event of an unsuccessful outcome.  Furthermore, the proposed service payments, subject to the approval of the Court, are modest compared to the estimated settlement's aggregate value and Class Counsels supports it.[15]

**D.     The Proposed Payment to Class Counsel for Attorneys' Fees and Expenses Is Reasonable**

Class Counsel contends, and Defendant supports, that a $273,333 award for payment of attorneys' fees and litigation costs is reasonable.[16]

---

[12]    (*See* Settlement Agreement, ¶ 1.26.)

[13]    (*See* Settlement Agreement, ¶ 4.2.)

[14]    (*See* Settlement Agreement, ¶ 6.1.)

[15]    (*See* Westrick Decl., ¶¶ 44-45.)

[16]    Class Counsel will formally bring a Motion for Attorneys' Fees and Litigation Expenses in conjunction with the Motion for Final Approval of Class Action Settlement.  With the present motion, Class Counsel merely asks the Court to preliminarily approve these fees and costs.

The Ninth Circuit has adopted a benchmark for attorneys' fees of approximately 25 percent. *Singer v. Becton Dickinson & Co.*, 2010 U.S. Dist. LEXIS 53416, *21 (S.D. Cal. June 1, 2010). This "benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors."*Six (6) Mexican Workers v. Az. Citrus Growers*, 904 F.2d 1301, 1311 (1990). A formal motion for attorneys' fees and costs will be filed when Plaintiff moves for final approval. At that time, this Court will evaluate the relevant factors when awarding attorneys' fees above the benchmark. *Singer*, 2010 U.S. Dist. LEXIS 53416 at *22.

Although a more detailed request will be made in a separate motion for attorneys' fees and costs at final approval, the factors in favor for exceeding the benchmark are present in this case. Given the significant results achieved under the circumstances of this litigation, the requested one-third fee award is reasonable. All relevant factors under Ninth Circuit law are present here. The settlement is an excellent result for class members given the risk of litigation. Class Counsel litigated this case extraordinarily well while working purely on a contingency basis.

As summarized by one of the leading federal courts with respect to class action issues:

> No one expects a lawyer whose compensation is contingent on the success of his services to charge, when successful, as little as he would charge a client who in advance of the litigation has agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expanded.

*Sumitomo Copper Litigation*, 74 F. Supp. 2d 393, 396 (S.D.N.Y. 1999).

Courts should give "proper deference to the private consensual decision of the parties," because "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent

necessary to reach a reasoned judgment that the agreement is not the product of
fraud or overreaching by, or collusion between, the negotiating parties, and the
settlement, taken as a whole, is fair, reasonable and adequate to all concerned."
*Hanlon*, 150 F.3d at 1027.

To properly manage the litigation of this case, Class Counsel was precluded
from taking other cases, and in fact, had to turn away other meritorious fee
generating cases.  When this case was taken on a contingent fee basis, with the firm
advancing litigation costs, the ultimate result was far from certain.  Class Counsel
incurred out-of-pocket costs including, but not limited to, filing fees, copy charges
for documents, computer research, consultant fees, mediator's fees, and mailing,
telephone and federal express charges.[17]

The action involved numerous matters that required significant time such as:
(1) pre-litigation investigation; (2) interviewing class members to investigate
Defendant's wage and hour practices; (3) research into the current state of the law as
to various causes of action, rights of privacy, and statistical proof; (4) extensive
discovery and study of documents including, but not limited to, wage records,
personnel files, employee handbooks, incentive plans, payroll policies and
procedures, record-keeping policies and procedures; (5) collection and analysis of
statistical data, upon which probabilities and value assessments were based, thereby
assuring that the settlement is premised on objective evidence and considered in
light of the risks and expenses of continued litigation; (6) mediation preparation and
attendance; and (7) negotiation and drafting of the settlement agreement and related
documents.

Despite the small class size Class Counsel diligently litigated this matter to
pursue the rights of TRU class members.  Despite the difficulties with certification,
liability and damages, class members will receive a total settlement worth up to

---

[17]     (*See* Westrick Decl., ¶ 47.)

$820,000.00, with the portion available to the class being reduced only by the administrative costs, employment taxes,penalties to the State of California, the amount of costs and attorneys' fees and the class representative service payment approved by the Court.

## IV.   PRELIMINARY CLASS CERTIFICATION IS APPROPRIATE

Class certification is preliminary when it is by stipulation of the parties and conditioned on the effectuation of a settlement agreement.  However, the requirements for preliminary class certification are substantially similar to those for a contested class certification: numerosity, typicality of the class representative's claims, adequacy of representation, predominance of common issues, and superiority.  Fed.R. Civ. P. 23(a).[18]

In addition, a class action for monetary damages must satisfy Rule 23(b)(3): 1) "predominance" - that the questions of law or fact common to the class members predominate over questions affecting only individual members; and 2) "superiority" - that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.[19]

---

[18]    (*See* Settlement Agreement, ¶ 3.)  Defendant stipulates to preliminary class certification for the purpose of settlement, however, Defendant would otherwise dispute these contentions. Pursuant to the terms of the Settlement Stipulation and this motion, the Court is only being asked to rule on the propriety of a settlement class.

[19]    It is with respect to the "superiority" requirement that preliminary class certification differs most conspicuously from a contested class certification, where the practical case management of a trial on the merits of the certified cause, or causes, of action is among the criteria evaluated in determining whether a class action is superior.  Because, with a settlement, there is by definition no trial or merits phase of any kind, this aspect of the certification inquiry is appropriately omitted from the evaluation of a stipulated preliminary certification.  Accordingly, the case management evaluation is appropriately omitted here.  (*See* Section IV.F, *infra*.)

### A.     The Proposed Class Is Sufficiently Numerous and Ascertainable

The numerosity requirement is met if the class is so large that joinder of all members would be impracticable.  *Hanlon*, 150 F.3d at 1019; *Gay v. Waiters' & Dairy Lunchmen's Union*, 489 F. Supp. 282 (N.D. Cal. 1980), *aff'd* 694 F.2d 531 (9th Cir. 1982).

The Ninth Circuit has held that numerosity could be satisfied by a class with 174 members, in part because of the "small size of each class member's claims." *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds,* 509 U.S. 810 (1982).  Here, the proposed class has approximately 250 members.  Accordingly, joinder of all class members would have been impracticable.

### B.     The Commonality Requirement Is Met

The commonality requirement is met if there are questions of law and fact common to the class.  *Hanlon*, 150 F.3d at 1019.  Here, Class Counsel believes there is sufficient evidence to prove that all class members were uniformly subject to the same employment, compensation and payroll policies and practices.  The class members are all Store Managers and all seek the same legal remedies.  Under these specific circumstances, the commonality requirement is satisfied.  *Id.* at 1019-20.

### C.     The Typicality Requirement Is Met

The typicality requirement is met if the claims of the named representative are typical of those of the class, though "they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.  Class Counsel believes that Plaintiff's claims are typical of the claims of the whole class because Plaintiff's claims arise from the same factual basis and are based on the same legal theories as those applicable to the other class members.  *See Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987).

### D.     The Adequacy Requirement Is Met

The adequacy requirement is met if the Class Representative and Class

1   Counsel have no interests adverse to the interests of the class members and are

2   committed to vigorously prosecuting the case on behalf of the class.  *Hanlon*, 150

3   F.3d at 1020.  Those standards are amply met here.

4         **E.**    **Common Issues Predominate Over Individual Issues**

5         Class certification is authorized where common questions of law and fact

6   predominate over individual questions, and where class-wide treatment of a dispute

7   is superior to individual litigation.  *Hanlon*, 150 F.3d at 1022-23.  The test is

8   whether the proposed class is sufficiently cohesive to warrant adjudication by

9   representation.  The proposed class in this case is sufficiently cohesive because all

10  class members share a "common nucleus of facts and potential legal remedies," as

11  was present in *Hanlon*, where the Ninth Circuit approved class certification under

12  the standards set forth in *Amchem Products v. Windsor*, 521 U.S. 591 (1997).

13  Class Counsel believes there is sufficient evidence to prove that all class members

14  were uniformly subject to the same employment, compensation, and payroll policies

15  and practices.  Moreover, TRU maintained a common practice of assigning non-

16  exempt labor hours to its California stores.  Additionally, Store Managers believed

17  that they would be disciplined for exceeding the hours assigned by TRU.  Because

18  Store Managers were the only employee in a store that could work as many hours as

19  necessary without adding to a store's labor costs, the result was that Store Managers

20  performed non-exempt duties in order to avoid exceeding the labor hours assigned

21  to their stores.  Under these circumstances, the predominance requirement is

22  satisfied.

23        Class Counsel contends that individualized issues do not predominate over

24  the issues of law and fact that are common to the class as a whole.  The statutes

25  applicable to each cause of action apply equally to each class member.  Factually,

26  Defendant's policies and practices apply class-wide.  Any deviation from TRU's

27  uniform policies and practices is the exception rather than the rule.

28

Accordingly, the requirement that common issues predominate is satisfied.

**F.      Class Settlement Is Superior**

Particularly in the settlement context, class resolution is superior to other available methods for the fair and efficient adjudication of the controversy. *See*, *e.g.*, *Hanlon*, 150 F.3d at 1023. The superiority requirement involves a "comparative evaluation of alternative mechanisms of dispute resolution." *Id.* Here, the alternative methods of resolution would be more than 250 individual suits, each with a small amount at stake, often not enough to justify the necessary legal expenses. These claims "would prove uneconomic for potential plaintiffs" because "litigation costs would dwarf potential recovery." *Id.* Accordingly, here, as in *Hanlon*, a class action is the superior method of resolution.

**V.      THE PROPOSED CLASS NOTICE IS APPROPRIATE**

**A.      The Class Notice Satisfies Due Process**

Rule 23(c)(2) of the Federal Rules of Civil Procedure, requires the Court to direct to class members the "best notice practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974). As the United States Supreme Court has held, notice by mail provides such "individual notice to all members" in accordance with Rule 23(c)(2). *Id.* Where the names and addresses of the class members are easily ascertainable, individual notice through the mail is "clearly the 'best notice practicable.'" *Id.* at 175.

The notice plan here entails mailing the Notice of Pendency of Class Action to all known and reasonably ascertainable class members. The Notice Packet is consistent with class certification notices approved by numerous state and federal courts, and is the best notice practicable. Defendant will provide the last known mailing addresses for the class members, based on Defendant's payroll records. The Claims Administrator will search for updated addresses before the initial mailing

1  and will endeavor to update Defendant's database via skip traces when mailed

2  Notices are returned.  Further, Reminder Postcards will be sent to all class members

3  who do not respond to the Notice at least 30 days before the claim deadline expires.

4      **B.     The Proposed Class Notice Is Accurate and Informative**

5          The proposed Notice provides information on the meaning and nature of the

6  settlement class, the terms and provisions of the settlement, the consideration for the

7  settlement, the Class Counsel's application for reimbursement of costs and

8  attorneys' fees, the date, time and place of the Final Approval Hearing, and the

9  procedure and deadlines for participating in the settlement, electing not to

10  participate in the settlement, or for submitting objections.

11         The Notice also fulfills the requirement of neutrality in class notices.  *See*

12  Newberg § 8.39.  The Notice summarizes the proceedings to date and the terms and

13  conditions of the settlement in an informative and coherent manner, complying with

14  the Manual's statement that "the notice should be accurate, objective, and

15  understandable to class members . . . ."  Manual§ 30.211.  Accordingly, the Notice

16  complies with the standards of fairness, completeness, and neutrality required of a

17  settlement class notice disseminated under authority of the Court.  *See* Fed. R. Civ.

18  P. 23(c)(2),(e); *and see* Newberg §§ 8.21, 8.39; Manual §§ 30.211, 30.212.

19  **VI.   A FINAL APPROVAL HEARING SHOULD BE SCHEDULED.**

20         The last step in the settlement approval process is the Final Approval Hearing.

21  At that time the Court hears all evidence and arguments necessary to evaluate the

22  Settlement Agreement.  At the Final Approval Hearing, proponents of the

23  Settlement Agreementmay explain and describe its terms and conditions and offer

24  arguments in support of settlement approval.  Class members may be heard in

25  support of or in opposition to the Settlement Agreement.

26         The parties hereby request a Final Approval hearing date on April 11, 2011or

27  a date soon thereafter at the Court's convenience.

28

1

## VII.   CONCLUSION

2
      For the foregoing reasons, Plaintiff requests this Court grant Preliminary

3
Approval.

4

5
Dated:  November 22, 2010                 Respectfully submitted,

6

7

8
                         By: /s/ Shawn C. Westrick

9
                           Shawn C. Westrick

10
                      KAWAHITO & SHRAGA LLP

11
                      Attorneys for Plaintiff/class members

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28