UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| WARREN SUMNER,<br><br>　　　　Plaintiff(s),<br><br>　　v.<br><br>TOYS R US. INC,<br><br>　　　　Defendant(s).<br>_____ | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO. SACV 09-00025 DOC (ANx)<br><br>**O R D E R GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

　　　Before the Court is a Motion for Preliminary Approval of Class Action Settlement, filed by Plaintiff Warren Sumner ("Sumner") on behalf of the class of Plaintiffs ("Plaintiffs") in the above-captioned case (Docket 51). Plaintiff requests that the Court (1) enter an order preliminarily approving the Joint Stipulation of Class Action Settlement ("Settlement"), (2) preliminarily certify the class for purposes of settlement; (3) approve the direct mailing of the class notice; (4) appoint Sumner as class representative; (5) appoint Kawahito & Shraga LLP as class counsel; (6) preliminarily approve the payment of a service award of $12,500 to Sumner; (7) preliminarily approve the payment of attorneys' fees and litigation costs to class counsel; and

(8) preliminarily appoint Simpluris, Inc. as claims administrator; (9) enter an order scheduling a final approval hearing.

### I. Factual Background

Plaintiff Sumner represents a proposed class of roughly 250 current and former Store Managers who worked at Defendant Toys R Us, Inc. ("TRU") from December 5, 2004 through the date of the Preliminary Approval. The class includes positions Defendants classified as exempt from overtime. Plaintiff alleges that Defendant intentionally and under the advisement of attorneys, required Plaintiff and class members to perform non-exempt job tasks more than 50% of the time, thereby depriving class members of, *inter alia*, meal breaks and overtime wages. Second Amended Complaint ("SAC"), ¶¶ 18-24.

Plaintiff asserts claims under the California Labor Code §§ 510 and 1198 for failure to pay overtime; §§ 201 and 202 for failure to pay wages upon termination of employment; § 226(a) for failure to provide accurate itemized wage statements; §§ 226.7(a) and 512(a) for failure to provide meal periods and to pay meal period compensation; and unlawful business practices in violation of the California Business & Professional Code § 17200. SAC.

This Court held a hearing on a Preliminary Approval Settlement motion on December 6, 2010. In the Court's tentative ruling, it denied portions of the settlement, due primarily to the high attorney fees and the reversion of remaining funds to TRU. The Court ordered the parties to determine a charity to which any remaining funds could be donated instead. After additional mediation, the parties present the present Motion.

### II. Legal Standard

Federal Rule of Civil Procedure 23(e) requires the Court to approve a class action settlement. "[I]n the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). The first step is to assess whether a class exists. *Id.* (citing *Amchem Prods. Inc. v.*

*Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231 (1997)).  A party seeking class certification must demonstrate the following prerequisites: "(1) numerosity of plaintiffs; (2) common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class."  *Hanlon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citing Fed. R. Civ. P. 23(a)).  Under Federal Rule of Civil Procedure 23(b)(3), the Court also must consider whether common questions of law and fact predominate, as well as whether the class action offers a superior method of adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3)**.**

Once the court certifies a settlement class, approval of the settlement terms rests in the sound discretion of the district court.  *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).  Under Federal Rule of Civil Procedure 23(e), the settlement, taken as a whole, must be (1) fundamentally fair, (2) adequate, and (3) reasonable to the Class.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  To determine whether a settlement is fair, courts look to the following factors for guidance: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and duration of further litigation; (3) the risk of maintaining class certification; (4) the amount of settlement; (5) investigation and discovery; (6) the experience and views of counsel; and (7) the reaction of class members to the proposed settlement.  *Staton v. Boeing Co.* , 327 F.3d 938, 959 (9th Cir. 2003).  The Court must also bear in mind that judicial policy favors settlement in class actions and other complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation*. In re Pacific Enterprises Securities Litigation* , 720 F. Supp. 1379, 1387 (D. Ariz. 1989).

### III.     Discussion
####    A.     Class Certification

As set forth above, the factors bearing on the propriety of class certification include (1) the numerosity of the purported class (2) the commonality of the class members' allegations (3) the typicality of the class representative's claims (4) the adequacy of the class representative's representation (5) whether common questions of law and fact predominate in the action and (6)

3

whether a class action offers a superior method of resolving the litigation. *Hanlon*, 976 F.2d at 508; Fed. R. Civ. P. 23. The Court will address each of these issues in turn.

### 1. Numerosity

Under Federal Rule of Civil Procedure Rule 23(a)(1), the numerosity element is met when "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(a). In this case, numerosity is met by the proposed class of 250class members, who could not practicably be joined.

### 2. Commonality

Plaintiff alleges the same claims on behalf of proposed class members, all of whom served the same position as Store Manager for Defendant. Plaintiff believes that all class members were subject to the same payment scheme, and seeks the same remedies on behalf of each class member. The commonality factor falls in favor of class certification.

### 3. Typicality

The typicality requirement looks to whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under [Rule 23's] permissive standards, representative claims are "typical" if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Plaintiff's claims are typical of class members' claims, as they arise from the same factual circumstances and seek the same legal remedy.

### 4. Adequacy of Representation

Plaintiff appears to have no interests adverse to the class members' interests, and has demonstrated a commitment to diligently prosecuting this case on behalf of all class members. Plaintiff has retained counsel from a recently-founded firm with experience litigating class actions on behalf of plaintiffs and defendants, most of which involve wage-related claims. Motion, 9. Counsel has been involved in extensive discovery on behalf of class members and, indeed, have secured what they argue is a substantial settlement on behalf of class members. Additionally, counsel continued to work on this Motion after the Court initially denied it.

### 5. Common Questions of Law and Fact Predominate

Common questions of law and fact predominate here. As described above, Plaintiff's claims are based on the allegation that all class members were subjected to the same common practice by TRU of assigning non-exempt labor hours to its stores in California. Because Store Managers were exempt from certain work hour restrictions, Plaintiff alleges that TRU could then force all of the class members were forced to work as many hours as necessary, without adding to a store's labor costs. The statutes under which Plaintiff has stated his claims apply to all class members, and Plaintiff argues that any deviations that occurred across the class members are minimal.

### 6. Superiority

Finally, a class action offers the superior method of resolving this dispute. Although the total amount of alleged damage in this case is significant, per-person damages are relatively low. As a result, most class members would regard individual actions as economically infeasible, given the tremendous costs of litigation. By allowing one suit to go forward on behalf of all class members, the members have the best chance of recovering.

Accordingly, after considering all the relevant factors, the Court GRANTS preliminary class certification for the purposes of settling.

## B. Fairness of the Settlement

The Court considers the revised proposed settlement, which the parties modified after further mediation following the hearing in December. Motion, 14.

### 1. Settlement Terms

TRU has agreed to pay up to $768,000 to settle all claims with class members. Motion, 1. The Settlement is believed to encompass a class of 250 members, and will resolve all claims brought in connection with this action. *Id.* at 14. The Settlement establishes a claims process that requires TRU to make payments according to a specific formula for each claim that is timely submitted. A class member who submits a valid and timely claim will receive a Settlement Payment, which will be a share of the Net Settlement Consideration based on the number of compensable workweeks worked by the class member during the class period.

1    The calculations for each class member who files a valid claim involve a calculation by
2 the Claims Administrator of the number of workweeks worked by all class members during the
3 class period.  The Net Settlement Consideration will then be divided by the total workweeks,
4 which will then result in a defined value for each workweek.  Each class member's compensable
5 workweek number will then be multiplied by the workweek value.

6    If less than 47% of the Net Settlement Consideration is claimed by class members, then
7 47% of the Net Payment will be distributed among class members who filed a valid claim on a
8 pro rata basis.  Any remaining funds will be given to the charity Children Affected by AIDS
9 Foundation.  Fifty-percent of the charitable contribution will be given in 2011 and the remaining
10 50% will be given in 2012.  *Id.* at 14.  The Court is pleased with the parties' agreed-upon
11 charity, which corrects for the previous proposed settlement's reversion portion.  *See Superior*
12 *Beverage Co. v. Owen-Illinois, Inc*., 827 F. Supp. 477, 478-79 (N.D. Ill. 1993) (collecting cases
13 establishing that where a related charity does not exist, parties can donate settlement funds to
14 any charitable organizations).

15    Preliminarily, the settlement terms discussed above appear to be (1) fundamentally fair,
16 (2) adequate, and (3) reasonable to the Class.  *See Hanlon v. Chrysler Corp*., 150 F.3d at 1026.
17 The parties state that the terms of the Settlement resulted from a great deal of work on the part of
18 counsel in researching, preparing legal documents, reviewing evidence, and conducting
19 discovery.  The Settlement resulted from  negotiations between the parties, including two formal
20 mediation session before private mediator Scott Markus on April 15, 2010 and June 7, 2010, as
21 well as follow-up sessions following the Court's December hearing.  These mediations
22 ultimately led to the Settlement agreement.  Motion, 14.  The parties engaged in fairly significant
23 discovery, including the taking of depositions and the exchange of documents.  After reviewing
24 this discovery and considering the information exchanged during settlement negotiations,
25 counsel for both sides, as well as the named plaintiff, have concluded that the proposed
26 Settlement is appropriate.  Therefore, at least two of the factors identified by the Ninth Circuit as
27 bearing on the fairness of a settlement - the amount of "investigation and discovery" conducted
28 as well as the "experience and views of counsel" - weigh in favor of approving the Settlement.

1  *See, e.g., Hanlon*, 150 F.3d at 1026; *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).

2  In addition, the parties in this case have already engaged in fairly lengthy litigation over
3  the issue of class certification..  This suggests that the "risk, expense, complexity, and duration
4  of further litigation" leans in favor of settlement.  *See, e.g., Hanlon*, 150 F.3d at 1026.
5  Furthermore, the strong support of Plaintiff's counsel for this settlement, along with the high
6  amount offered in settlement suggest that the Settlement is fair.  *Id.*

7  Thus, with the exception of the reversion provision, the Settlement is fair.  The parties are
8  ORDERED to choose a charity to which remaining funds would be diverted in the event they are
9  not claimed.

### 2. Notice

The notice plan accompanying the settlement would mail a Notice of Pendency of Class Action ("Notice") to all known and reasonably ascertainable class members.  Addresses for potential class members will be obtained based on TRU's payroll records and through the help of the Claims Administrator, who will search for updated information for each potential class member prior to the initial mailing and will continue to monitor and update address records based on responses.  The Claims Administrator will send   Postcards will also be sent out to all class members who fail to respond to the mailings no later than 30 days and no earlier than 20 days before the deadline for joining the claim.  Settlement, 15.  Great care will be taken through the mailing system to ensure that each class member receives notice, and, indeed, a minimum of two attempts will be made to contact each member who does not respond initially.  *Id.*

Each class member will also be informed of his or her right to opt out of the Settlement or to object to its terms and will have 60 days to do so.  *Id.* at 16.  If ten percent or more of the class members opt out of the settlement, TRU shall have the right to terminate the settlement.  *Id.*

The Court also commends the parties for their amended Notice, the top of which reads:

> THIS NOTICE CONTAINS IMPORTANT INFORMATION AS TO YOUR
> RIGHTS.  THIS NOTICE REQUIRES THAT ON OR BEFORE [60 days] YOU
> SUBMIT A WRITTEN REQUEST FOR EXCLUSION IN ORDER TO BE
> EXCLUDED FROM THE SETTLEMENT . . . .  IF YOU DO NOTHING YOU

1 WILL RELEASE CLAIMS AGAINST TOYS "R" US AND YOU WILL NOT
2 RECEIVE ANY COMPENSATION FROM THE SETTLEMENT.

Notice, 1. The Court appreciates the parties' attempt to draw class members' attention to this section and to emphasize that class members must act affirmatively to benefit from the Settlement. The Court therefore approves of this Notice provision.

### 3. Attorneys' Fees and Costs

Plaintiff's counsel requests $192,000 in attorneys' fees and costs–one-fourth of the Settlement amount. Court-approved attorneys fees must be "reasonable" under the circumstances of the case. *Paul, Johnson, Alston, and Hunt v. Grundy*, 886 F.2d 268, 271 (9th Cir. 1988). In *Grundy*, the Ninth Circuit stated that reasonable attorneys fees usually will be equal to or lesser than twenty-five percent of the total settlement award. The requested attorneys fees in this case fall within the Ninth Circuit's twenty-five percent benchmark. The Court does not doubt that Counsel, particularly as part of a small "boutique" law firm, worked diligently and tirelessly, and were forced to turn away other cases because of its dedication to this case. The Court also commends counsel's accomplishments in securing a stipulation for a Settlement agreement in a case that presented some challenges, and for persisting even when the Court rejected the initial proposed settlement. Accordingly, the maximum recommended percentage under the Ninth Circuit's model attorneys' fee percentage is appropriate.

The Court therefore GRANTS Class Counsel's request for $192,000 in fees and costs.

### 4. Service Award to Sumner

Counsel requests that Plaintiff Sumner be awarded a $12,500 payment, as the Class Representative. Indeed, Sumner risked potential responsibility for attorneys' fees should he have lost the case, and, as the Class Representative, he carried the burden of the lawsuit on behalf of all potential class members. According to the Court's calculations, if 250 class members emerge, each would be entitled to over $3000. Awarding Sumner four times that amount does seem reasonable, given the large role he has played in this case. The Court therefore GRANTS proposed payment to Sumner of $12,500.

**IV. Disposition**

Based on the foregoing, the Court

(1) GRANTS preliminary settlement approval with the exception of the reversion provision, which the Court ORDERS the parties to revise;

(2) GRANTS preliminary class certification for the purposes of settlement;

(3) GRANTS approval of the direct mailing of the class notice;

(4) GRANTS the appointment of Sumner as class representative;

(5) GRANTS the appointment of Kawahito & Shraga LLP as class counsel;

(6) GRANTS the preliminary approval of the the payment of a service award of $12,500 to Sumner;

(7) GRANTS preliminary approval of the payment of attorneys' fees and litigation costs to class counsel; and

(8) GRANTS a preliminary appointment of Simpluris, Inc. as claims administrator;

(9) ORDERS a final settlement approval hearing for August 5, 2011.

IT IS SO ORDERED.

DATED: April 8, 2011

_____
DAVID O. CARTER
United States District Judge